6/10/2021 3:08 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 54304219
By: Monica Jackson
Filed: 6/10/2021 3:08 PM

2021-35012 / Court: 334

CAUSE NO. _____

| | | |
|---|---|---|
| JANE DOE 1 AND JANE DOE 2 | § § § § | IN THE DISTRICT COURT OF |
| V. | § § § | HARRIS COUNTY, TEXAS |
| | § § § § | \_\_\_\_\_ DISTRICT COURT |
| UBER TECHNOLOGIES, INC., LYFT, INC., AND JOHN DOE | § § § | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COME Plaintiffs Jane Doe 1 and Jane Doe 2, who file this Original Petition, complaining of Defendants Uber Technologies, Inc., Lyft, Inc., and John Doe, and would respectfully show this Court the following:

### I.   PARTIES

1. Plaintiff Jane Doe 1 is an individual residing in Texas.

2. Plaintiff Jane Doe 2 is an individual residing in Texas.

3. Defendant Uber Technologies, Inc. ("Uber") is a foreign corporation doing business in Texas. Defendant may be served through its registered agent: CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

4. Defendant Lyft, Inc. ("Lyft") is a foreign corporation doing business in Texas. Defendant may be served through its registered agent: CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

5. Defendant John Doe is an individual residing in Texas. Defendant may be served wherever he may be found.

1

6. Plaintiffs specifically invokes the right to institute this suit against whatever entities were conducting business using the assumed or common name of "Uber" or "Lyft" with regard to the events described in this Petition.

7. Plaintiffs expressly invoke their right under Rule 28 of the Texas Rules of Civil Procedure to have the true name of these parties substituted at a later time, upon the motion of any party or one of the Court.

## II. DISCOVERY CONTROL PLAN

8. Plaintiffs intend to conduct discovery under Level 2.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements. Plaintiffs seek monetary relief over $1,000,000. Additionally, removal to federal court would be improper because this lawsuit does not involve a federal question, this lawsuit lacks diversity and/or because of the forum defendant rule.

10. Venue is proper in this County under Texas Civil Practice & Remedies Code § 15.002 because this is the county in which at least a substantial part of the events or omissions giving rise to the claim occurred.

## IV. FACTUAL SUMMARY

11. On or about June 14, 2019, Plaintiffs Jane Doe 1 and Jane Doe 2 were having a night out in Houston. After a night of drinking, Jane Doe 1 and Jane Doe 2 were responsible and called a rideshare. Defendant John Doe picked them up and drove Jane Doe 1 and Jane Doe 2 to a fast-food drive-thru. During the ride, John Doe assaulted Jane Doe 2 by grabbing her breast

2

without consent. Additionally, John Doe began making inappropriate comments to Jane Doe 1 and Jane Doe 2.

12. Jane Doe 2 managed to get out of the vehicle and photographed the vehicle's license plate as John Doe drove off with Jane Doe 1 still in the vehicle.

13. John Doe drove around, stopping at several different locations and forcing himself on top of Jane Doe 1. John Doe pulled Jane Doe 1's tights and panties down. John Doe was kissing on Jane Doe 1, touching her all over, and trying to force his penis inside her vagina as Jane Doe 1 repeatedly tried to stop him and repeatedly told him to stop.

14. What Jane Doe 1 went through that night was horrific and unspeakable. Jane Doe 1 has experienced, and continues to experience, extreme trauma. Her life will never be the same.

15. Defendant John Doe drove for both Uber and for Lyft.

16. Recently Uber and Lyft announced an industry sharing safety program, where they indicated they would share information about drivers deactivated from each company's respective platform. There is no reason this could not have been done earlier. In fact, John Doe here eventually was deactivated from one company, yet still allowed to drive for the other.

17. Both Uber and Lyft have extensive marketing campaigns centered on providing a safe ride for riders. Several examples of this include:

  a) Uber advertises a "door-to-door safety standard," to claim that Uber is looking out for rider safety from the pick-up to the destination drop-off.

  b) Uber advertises "RideCheck," to claim that Uber is looking out for rider safety by "using sensors and GPS data … to detect if a trip goes unusually off-course."

  c) Lyft advertises "Safety First."

3

  d) Both Uber and Lyft claim to have rigorous screening processes in place for their drivers.

  e) Both Uber and Lyft claim to have ongoing monitoring of their drivers.

  f) Both Uber and Lyft claim their drivers go through safety training and education.

18. In reality, both Uber and Lyft fall well short in their claims.

19. Both Uber and Lyft had had a sizeable number of lawsuits lodged against them for riders who were assaulted or sexually assaulted. Both Uber and Lyft routinely claim, in lawsuit documents, that their drivers are independent and/or that they do not have any control over their drivers. This is directly contrary to their public claims that they take numerous steps to screen, educate and train their drivers, to monitor rides, and to ensure a safe ride door-to-door.

20. Uber has claimed publicly: "We don't believe corporate secrecy will make anyone safer." Despite this, Uber is notorious for withholding documents and information following assaults. In fact, in California, Uber was recently fined $59 million for refusing to hand over assault data.[1]

> California regulators issued a $59-million fine to Uber and threatened to suspend the company's operating license in a Monday ruling. At issue: the company's ongoing refusal to hand over detailed sexual assault data.
>
> Uber has spent a year stonewalling state regulators' requests for additional information on sexual harassment or assault claims made by its customers and drivers. The requests first came when the company disclosed in a December 2019 report that it had received roughly 6,000 reports of sexual assault in the United States over the course of two years.

21. A New York Times investigative article found that Uber was charging riders for a $1 "Safe Rides Fee" on each fare—a fee that only went towards adding $1 of pure margin to each trip, and not safety.[2]

---

[1] https://www.latimes.com/business/technology/story/2020-12-15/california-fines-uber-59-million-threatens-license-over-refusal-to-disclose-sexual-assault-data
[2] https://www.nytimes.com/2019/08/23/business/how-uber-got-lost.html

4

> It was April 2014, and Uber was announcing a new $1 charge on fares called the Safe Rides Fee. The start-up described the charge as necessary to fund "an industry-leading background check process, regular motor vehicle checks, driver safety education, development of safety features in the app, and insurance."
>
> But that was misleading. Uber's margin on any given fare was mostly fixed, at around 20 to 25 percent, with the remainder going to the driver. According to employees who worked on the project, the Safe Rides Fee was devised primarily to add $1 of pure margin to each trip. Over time, court documents show, it brought in nearly half a billion dollars for the company, and after the money was collected, it was never earmarked specifically for improving safety.
>
> "We boosted our margins saying our rides were safer," one former employee told me last year, as I was reporting a book about Uber. "It was obscene." (Uber and its founder, Travis Kalanick, declined to comment for this article.)

In the New York Times' investigative effort, Uber did not even bother denying the allegation made by its former employee. Further, Uber's executives have publicly acknowledged the existence of training and training videos, yet Uber routinely claims in litigation that it does not train drivers. Both Plaintiffs have suffered serious damages. This lawsuit is necessary to hold Defendants accountable, as well as to ensure Defendants do not put others at risk.

## V. CAUSES OF ACTION

**A.  SEXUAL ASSAULT, ASSAULT, AND BATTERY (JOHN DOE)**

22. Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

23. The acts committed by John Doe constitute felony assault. John Doe's actions resulted in harmful and offensive contact with Plaintiffs.

**B.  KIDNAPPING AND FALSE IMPRISONMENT (JOHN DOE)**

24. Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

5

25. John Doe kidnapped and falsely imprisoned Plaintiffs.

C. **NEGLIGENCE (ALL DEFENDANTS)**

26. Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

27. Defendants owed a duty of reasonable care to Plaintiffs. Defendants breached this duty in several ways, including but not limited to, the following:

1. Failing to exercise reasonable care;
2. Failing to properly screen, retain, hire, train, and/or supervise;
3. Failing to promulgate effective safety policies;
4. Making exaggerated and untruthful claims about monitoring rides and providing a safe ride from pick-up to drop-off;
5. Failing to ensure safety policies and procedures were enforced and followed; and
6. Failing to exercise reasonable control over employees, agents and/or contractors.

28. Each of these acts and omissions, singularly or in combination with others, constitute negligence which was the proximate cause of this incident and Plaintiffs' injuries.

D. **AGENCY, RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY (ALL DEFENDANTS)**

29. Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

30. Defendants are responsible for the conduct of their drivers, employees, and/or agents due to the relationship that existed, among other acts and omissions of negligence which may be shown during the trial of this cause.

E. **NEGLIGENT HIRING, RETENTION, TRAINING, AND SCREENING, AND FAILURE TO WARN (UBER AND LYFT)**

6

31. Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

32. Defendants failed to properly screen, hire and train their drivers, including John Doe.

33. Defendants knew or should have known that John Doe should not have been operating as a driver and/or posed a risk of harm to riders like Plaintiffs.

34. It was foreseeable that a sexual assault may occur if Defendant did not undertake proper procedures.

35. Defendants provided John Doe direct access to riders, despite failing to adequately investigate, regulate, monitor, and supervise John Doe.

**F.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (JOHN DOE)**

36. Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

**G.    GROSS NEGLIGENCE (ALL DEFENDANTS)**

37. Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

38. Plaintiff will further show that the acts and/or omissions of Defendants, when viewed objectively from Defendants' standpoint, involved an extreme risk considering the probability and magnitude of the potential harm to others. Defendants had actual subjective awareness of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, and/or welfare of others, including Plaintiffs. As such, Defendants' actions and omissions constitute gross negligence. Therefore, Plaintiffs pray that punitive damages be awarded against Defendant.

**VI.    DAMAGES**

39. Plaintiffs seek damages for physical pain and suffering in the past and future; mental anguish in the past and future; medical expenses in the past and future; loss of earning

capacity in the past and future; loss of household services in the past and future; costs of suit; and pre-judgment and post-judgment interest at the appropriate rate allowed by law.

40. Plaintiffs seek any other and further relief to which Plaintiffs may be justly entitled, including punitive damages for Defendants' actions. Plaintiffs also plead that due to the felony acts that occurred, there is no limitation on exemplary damages.

## VII. JURY DEMAND

41. Plaintiffs respectfully demand a jury trial.

## VIII. PRESERVATION NOTICE

42. Plaintiffs request that Defendants preserve any and all related evidence, reports, statements, notes, trip logs, GPS data, internal communications, emails, text messages, materials, communications with governmental entities, photos, and videos. Defendants' failure to preserve relevant evidence may warrant a spoliation instruction at trial which creates a presumption that if the evidence was preserved, it would weigh against the respective party.

## IX. PRAYER

43. Plaintiffs ask that Defendants be cited to appear and answer this suit. Plaintiffs pray for any and all other relief to which they may be justly entitled.

(SIGNATURE ON NEXT PAGE)

Respectfully submitted,

**DALY & BLACK, P.C.**

By: */s/ Andrew Dao*
Andrew Dao
Texas Bar No. 24082895
adao@dalyblack.com
Kyle Patrick Malone
Texas Bar No. 24102128
kmalone@dalyblack.com
2211 Norfolk, Suite 800
Houston, Texas 77098
Telephone: (713) 655-1405
Facsimile: (713) 655-1587
ecfs@dalyblack.com (service)

**-AND-**

*/s/ Michelle Simpson Tuegel*
THE SIMPSON TUEGEL LAW FIRM, PLLC
MICHELLE SIMPSON TUEGEL
State Bar No. 24075187
3301 Elm St.
Dallas, Texas 75226
(214) 774-9121
(214) 614-9218 (fax)
michelle@stfirm.com

**-AND-**

*/s/ Michael M. Nguyen*
Michael Nguyen
State Bar No. 24010785
mike@nnfirm.com
Son Ngo
State Bar No. 24049751
sonny@nnfirm.com
NN Firm, PLLC
701 N. Post Oak Rd., Suite 600
Tel: (713) 681-6999
Fax (888) 988-0797

**ATTORNEYS FOR PLAINTIFFS**